Slip Op. 11-25

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| PSC VSMPO-AVISMA Corporation and VSMPO-Tirus, U.S., Inc., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Before: Jane A. Restani, Judge |
| UNITED STATES, | : : | Court No. 09-00349 |
| Defendant | : : | **Public Version** |
| and | : : | |
| US Magnesium LLC | : : : | |
| Intervenor Defendant | : : | |

**OPINION AND ORDER**

[Remand to Department of Commerce to reconsider AFA rate.]

Dated: March 7, 2011

       Arent Fox LLP (John M. Gurley, Mark P. Lunn, and Diana Dimitriuc-Quaia) for the plaintiffs.

       Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); Office of Chief Counsel for Import Administration, U.S. Department of Commerce (Daniel J. Calhoun), of counsel, for the defendant.

       King & Spalding, LLP (Stephen A. Jones, Jeffrey B. Denning, Jeffrey M. Telep, and Steven R. Keener) for the intervenor-defendant.

       Restani, Judge: This court action challenges the Department of Commerce's

("Commerce") final results rendered in an antidumping duty review of magnesium metal from

Russian Federation ("Russia"). See Magnesium Metal From the Russian Federation: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 74 Fed. Reg. 39,919 (Dep't Commerce Aug. 10, 2000). The plaintiffs, PSC VSMPO-AVISMA Corporation and VSMPO-Tirus, U.S., Inc. (collectively "AVISMA"), submitted a motion for judgment on the agency record pursuant to USCIT Rule 56. For the reasons stated below, the court denies the plaintiffs' motion in part and remands to Commerce so that it may reconsider the AFA rate.

## BACKGROUND

In February 2004, multiple U.S. companies, representing the domestic producers of magnesium metal ("the domestic industry"),[1] filed a petition with Commerce concerning magnesium metal from Russia and the People's Republic of China. Initiation, 69 Fed. Reg. at 15,293. In March 2004, Commerce initiated an antidumping investigation of magnesium metal from Russia for the period of January 1, 2003 through December 31, 2003, id. at 15,295, and selected AVISMA and Solikamsk Magnesium Works ("SMW") as the mandatory respondents, Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Magnesium Metal From the Russian Federation, 69 Fed. Reg. 59,197, 59,198 (Dep't Commerce Oct. 4, 2004). In March 2005, Commerce determined that AVISMA and SMW, during the period of investigation, sold the subject merchandise in the United States with

---

[1] The "ad hoc coalition" consisted of U.S. Magnesium Corporation LLC ("U.S. Magnesium"), United Steelworkers of America, Local 8319, and Glass, Molders, Pottery, Plastics & Allied Workers International, Local 374. Notice of Initiation of Antidumping Duty Investigations: Magnesium Metal From the People's Republic of China and the Russian Federation, 69 Fed. Reg. 15,293, 15,293 (Dep't Commerce Mar. 25, 2004) ("Initiation").

Court No. 09-00349                                                                                                    Page 3

antidumping duty (AD) margins of 21.71% and 18.65% respectively.[2]  <u>Magnesium Metal From the Russian Federation: Notice of Amended Final Determination of Sales at Less Than Fair Value</u>, 70 Fed. Reg. 15,837, 15,837 (Dep't Commerce Mar. 29, 2005).

In September 2007, Commerce completed an administrative review of this order for the period of October 4, 2004, through March 31, 2006, and calculated AD margins of .41% (de minimis) for AVISMA and 3.77% for SMW.  <u>Magnesium Metal from the Russian Federal: Final Results of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 51,791, 51,792 (Dep't Commerce Sept. 11, 2007).  In September 2008, Commerce published the results of the administrative review ("2006/07 review") for the period of April 1, 2006, through March 31, 2007, and calculated an AD margin of 15.77% for AVISMA.  <u>Magnesium Metal from the Russian Federation: Final Results of Antidumping Duty Administrative Review</u>, 73 Fed. Reg. 52,642, 52,643 (Dep't Commerce Sept. 10, 2008) ("<u>Final Results 2008</u>").  Commerce, however, selected an adverse facts available ("AFA") rate of 21.71% for SMW.[3]  <u>Id.</u>

In June 2008, Commerce initiated the administrative review ("2007/08 review") of the AD duty order regarding magnesium metal from Russia for the period of April 1, 2007,

---

[2] An AD margin is the difference between the normal value ("NV") of merchandise and the price for sale in the United States.  <u>See</u> 19 U.S.C. § 1673e(a)(1); 19 U.S.C. § 1677(35).  Unless nonmarket economy ("NME") methodology is used, an NV is either the price of the merchandise when sold for consumption in the exporting country or the price of the merchandise when sold for consumption in a similar country.  19 U.S.C. § 1677b(a)(1).  An export price or constructed export price is the price that the merchandise is sold for in the United States.  19 U.S.C. § 1677a(a) (b).

[3] Shortly after the initiation of the second review, SMW notified Commerce that it would not participate.  <u>Magnesium Metal from the Russian Federation: Preliminary Results of Antidumping Duty Administrative Review</u>, 73 Fed. Reg. 24,541, 24,542 (Dep't Commerce May 5, 2008).

through March 31, 2008.  <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part</u>, 73 Fed. Reg. 31,813, 31,813 (Dep't Commerce June 4, 2008).  In January 2009, however, AVISMA informed Commerce that it would no longer participate in the administrative review because of "the administrative burdens required to pursue this review further, including multiple verifications of AVISMA and VSMPO-Tirus, a change in AVISMA's product focus, as well as other matters affecting the respondents' business."  Pls.' Confidential App. Tab 2, 1.  In April 2009, Commerce published the preliminary results of its review and assigned AVISMA an AFA rate of 43.58%, "the highest transaction-specific rate [it] calculated in the 2006/07 administrative review of the order with respect to AVISMA."  <u>Magnesium Metal From the Russian Federation: Preliminary Results of Antidumping Duty Administrative Review and Intent To Rescind in Part</u>, 74 Fed. Reg. 15,435, 15,437 (Dep't Commerce Apr. 6, 2009).  In response to this AFA rate, AVISMA submitted a case brief urging Commerce to select the lower rate of 21.71%, the highest weighted-average margin from the original AD investigation.  Pls.' Confidential App. Tab 11, 29  34.  Nevertheless, Commerce published its final results in August 2009, and selected an AFA rate of 43.58% for AVISMA.  <u>Magnesium Metal From the Russian Federation: Final Results and Partial Rescission of Antidumping Duty Administrative Review</u>, 74 Fed. Reg. 39,919, 39,920 (Dep't Commerce Aug. 10, 2009) ("<u>Final Results</u>").

       In August 2009, the plaintiffs commenced this action contesting the AFA rate of 43.58%.  In March 2010, the plaintiffs filed a motion for judgment on the agency record pursuant to USCIT Rule 56.2.

## STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will uphold Commerce's final results in AD reviews unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

**I.      19 U.S.C. § 1677e**

During an AD review, when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority . . . the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). The AD duty rate under such circumstances is known as an AFA rate and may be based on information obtained from: "(1) the petition, (2) a final determination in the investigation under this title, (3) any previous review under . . . [19 U.S.C. § 1675] or determination under . . . [19 U.S.C. § 1675b], or (4) any other information placed on the record." Id. For this reason, the United States Court of Appeals for the Federal Circuit has repeatedly acknowledged that "Commerce's discretion in applying an AFA margin is particularly great." PAM S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009).

    **A.      AVISMA's AFA Rate is Uncorroborated**

AVISMA challenges the Final Results on the grounds that the selected AFA rate of 43.58% violates 19 U.S.C. § 1677e(c) because it is not corroborated. Pls. PSC VSMPO-AVISMA Corporation and VSMPO-TIRUS, US Inc.'s Mem. Law Supp. Mot. J. on the Agency

R. Pursuant to Rule 56.2 ("Pls.' Br.") 8, 17. This claim has merit.

Although "the possibility of a high AFA margin creates a powerful incentive to avoid dumping and to cooperate in investigations, there is a limit to Commerce's discretion." PAM S.p.A., 582 F.3d at 1340. Pursuant to 19 U.S.C. § 1677e(c), "[w]hen the administering authority . . . relies on secondary information rather than on information obtained in the course of an investigation or review, the administering authority . . . shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal." 19 U.S.C. § 1677e(c). "Secondary information includes [i]nformation derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under [19 U.S.C. § 1675] concerning the subject merchandise." KYD, Inc. v. United States, 607 F.3d 760, 765 (Fed. Cir. 2010) (internal quotation marks and citation omitted). Here, the AFA rate of 43.58% was based on the highest transaction-specific margin calculated for AVISMA during the previous administrative review, and thus, is secondary information. Commerce must, therefore, corroborate this information "to the extent practicable." 19 U.S.C. § 1677e(c); see also Gallant Ocean (Thai.) Co., Ltd. v. United States, 602 F.3d 1319, 1324 (Fed. Cir. 2010).

In order to corroborate an AFA rate, Commerce must show that it used "reliable facts" that had "some grounding in commercial reality." Gallant, 602 F.3d a 1324. Here, Commerce reasoned that the AFA rate of 43.58% was relevant and reliable and therefore, "corroborated to the extent practicable," as a result of it being "based on AVISMA's questionnaire responses and accompanying data from the immediately preceding administrative

review that are uncontradicted by any record evidence." Issues and Decision Memorandum for the Antidumping Duty Administrative Review of Magnesium Metal from the Russian Federation for the Period of Review April 1, 2007, through March 31, 2008, A-821-819, at 14 (Aug. 10, 2009) ("Issues and Decision Memorandum"), available at Pls.' Confidential App. Tab 8. Commerce's apparent understanding of reliability, however, is misplaced. The mere fact that specific-transaction data is accurate and verified does not ipso facto render it reliable for these purposes.[4] See PAM, S.p.A., 582 F.3d at 1340 (providing that "one sale by itself" will not "always rise to the level of substantial evidence"); JTEKT Corp. v. United States, 675 F. Supp. 2d 1205, 1256 (CIT 2009); Ferro Union, Inc. v. United States, 44 F. Supp. 2d 1310, 1334 (CIT 1999).[5] Rather, reliability in this context is determined by the information's relationship to the commercial reality of this respondent. See Gallant, 602 F.3d at 1323  24. Thus, otherwise uncontradicted information from prior reviews can be proven ungrounded in commercial reality

---

[4] U.S. Magnesium relies heavily on Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330 (Fed. Cir. 2002), for the proposition that a single sale from a prior review can render an AFA rate corroborated. See US Magnesium's Resp. in Opp'n Pls.' Rule 56.2 Mot. for J. on the Agency R. 26  27. The Federal Circuit recently explained, however, that despite language in the opinion to the contrary, "Ta Chen was not a corroboration case as Commerce relied on primary information." Gallant, 602 F.3d at 1324. Commerce, therefore, did not need to establish specifically how the one actual sale in that case corroborated the selected rate. For this reason, Ta Chen is distinguishable from this case because the single sale data used here is from a prior review and thus, must be corroborated. See Final Results, 74 Fed. Reg. at 39,920; Ta Chen, 298 F.3d at 1339. In any case, however, substantial evidence has to support the choice of rate.

[5] Although both of the last two cases involved margins that were far more out of date than the one at hand, JTEKT Corp., 675 F. Supp. 2d at 1256 (margin calculated seventeen years earlier) Ferro Union, Inc., 44 F. Supp. 2d at 1335 (margin calculated eight years earlier), there is no reason to assume their holdings are limited to those circumstances, as the Government suggests, Def.'s Resp. Pls.' Rule 56.2 Mot. J. Upon Agency R. 17. Commerce cannot "proceed[] on the basis that prior calculated margins are ipso facto reliable," as it did in this case. Ferro Union, Inc., 44 F. Supp. 2d at 1334. Rather, it must do more to show relevancy and reliability.

if "much more reliable information," such as a large quantity of more recent data suggesting different market conditions, is present. Id. at 1323.

Commerce, therefore, has failed to explain its reasoning adequately or has failed to corroborate adequately AVISMA's AFA rate because it has not related it to market realities.[6] See Gallant, 602 F.3d at 1325 (holding that an AFA rate is uncorroborated when "Commerce . . . did not show that a small percentage of the mandatory respondents' transactions represented a reasonably accurate estimate of [the plaintiff's] actual dumping margin").[7] Accordingly, the court remands this matter to Commerce with instructions to either reasonably explain such a relationship, thereby corroborating the 43.58% AFA rate, or replace it with a rate that is corroborated.[8] See Gallant, 602 F.3d at 1324; Taifa, 2010 Ct. Int'l Trade LEXIS 131, at *18 19.

### B. AVISMA's AFA Rate Has Not Been Demonstrated to Be Punitive

---

[6] While the fact that this rate was calculated from single sale data from the previous administrative review may be some evidence, Commerce must explain what relevance this rate has to current commercial reality. See Pls.' Reply to Def.'s and Def.-Intervenor's Resps. in Opp'n to Pls.' Mot. for J. on the Agency R. 11.

[7] The court has noted that a rate based on specific transactions is generally not as acceptable as an overall rate calculated for a party. See Qingdao Taifa Grp. Co., Ltd. v. United States, Slip Op. 10-126, 2010 Ct. Int'l Trade LEXIS 131, *17 18 (CIT Nov. 12, 2010); see also infra Sect. II.

[8] It remains unclear whether or not Commerce can explain or corroborate this percentage given the facts of this case. The AFA rate calculated was using the data of one sale from a prior investigation that is significantly higher than the next three highest transaction specific rates from that review ([[     ]]%, [[     ]]%, and [[     ]]%). See Pls.' Br. 24. Even in PAM, S.p.A., Commerce corroborated the AFA rate by a percentage, albeit small, of prior sales. 582 F.3d at 1340. If Commerce were to adopt a similar methodology in this case, AVISMA's AFA rate would be much lower than it is now. See Pls.' Br. 24.

*Confidential Data Deleted*

Next, AVISMA argues that the AFA rate was punitive because, <u>inter alia</u>,[9] Commerce assigned SMW, another uncooperative Russian respondent, an AFA rate of 21.71% in the prior review.  <u>See</u> Pls.' Br. 32  38.  This argument lacks merit.

"[T]he purpose of <u>section 1677e(b)</u> is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."  <u>F.Lii De Cecco Di Filippo Fara S. Martino S.p.A. v. United States</u>, 216 F.3d 1027, 1032 (Fed. Cir. 2000).  An AFA rate is punitive if it is not "based on facts" and  "has been discredited by the agency's own investigation."  <u>Id.</u>, at 1033 (internal quotation marks omitted).  At this point there is little evidence establishing whether the rate is punitive or not.  If the rate is sufficiently corroborated as a reliable rate it will not be found to be punitive.

### C.      AVISMA's AFA Rate Has Not Been Demonstrated to Be Aberrational

Additionally, AVISMA argues that its AFA rate is impermissibly aberrational because it is based on an outlier sale.  Pls.' Br. 25  32.  Specifically, AVISMA argues that this single sale had an unusually low quantity, and unusually high freight expenses.  <u>See id.</u>  This argument lacks merit.

During its review, AVISMA raised its concerns about the representational value of this sale and Commerce investigated, but concluded that these allegedly abnormal factors were not correlated to a higher margin.  <u>Administrative Review of the Antidumping Duty Order on</u>

---

[9] AVISMA's contentions on several of these issues are repetitive at times.  <u>See</u> Pl.'s Br. 17  38.  This is because one of AVISMA's claims, that Commerce's decision was not supported by substantial evidence because this transaction-specific margin was so large compared to all others if successful, would render this AFA rate uncorroborated, aberrational, or punitive, or all three.

Magnesium Metal from the Russian Federation - Final Results Analysis Memorandum for PSC VSMPO-AVISMA Corporation, 2, available at Pls.' Confidential App. Tab 15.  Thus, Commerce demonstrated that high freight expenses or low quantities did not cause this sale's higher transaction-specific margin.  See id.  With the exception of the fact that this sale has the highest transaction-specific margin by a wide margin from the previous review,[10] there is no evidence on the record that demonstrates how this sale was irregular.  At this time there does not appear to be substantial evidence on this issue, either way.

## II.  Commerce's Methodology

Finally, AVISMA claims that Commerce's decision to base the AFA rate on a transaction-specific margin is unreasonable in light of Commerce's general practice of adopting the highest weighted-average margin calculated for any respondent in any previous segment of the proceeding.  Pls.' Br. 10  12.  This claim has merit.

Generally, statutory silence has been interpreted as "an invitation" for an agency administering unfair trade law to "perform its duties in the way it believes most suitable" and courts will uphold these decisions "[s]o long as the [agency]'s analysis does not violate any statute and is not otherwise arbitrary and capricious."  U.S. Steel Group v. United States, 96 F.3d 1352, 1362 (Fed. Cir. 1996).  For this reason, "Commerce has broad discretion in making antidumping determinations."  Gallant, 602 F.3d at 1323.  As previously discussed, this "discretion is particularly great in the case of uncooperative respondents."  Id.

---

[10] This fact, in and of itself, does not automatically render the rate aberrational.  See Branco Peres Citrus, S.A. v. United States, 173 F. Supp. 2d 1363, 1376 (CIT 2001) (holding that an AFA rate based on a transaction-specific margin was supported by substantial evidence).

When selecting an AFA rate in an administrative review, Commerce has utilized its discretion by seemingly establishing a practice of adopting the highest weighted-average margin calculated for any respondent during either the original investigation or any subsequent review.  See <u>Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review</u>, 74 Fed. Reg. 3987, 3989 (Dep't Commerce Jan. 22, 2009); <u>Final Results 2008</u>, 73 Fed. Reg. at 52,643; <u>Certain Small Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe from Romania: Preliminary Results of Antidumping Duty Administrative Review</u>, 71 Fed. Reg. 1509, 1510 (Dep't Commerce Jan. 10, 2006); <u>Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Preliminary Results of Antidumping Duty Review and Antidumping Duty New Shipper Review</u>, 69 Fed. Reg. 54,101, 54,104 05 (Dep't Commerce Sept. 7, 2004); <u>Notice of Final Results and Partial Recision of Antidumping Duty Administrative Review; Oil Country Tubular Goods, Other Than Drill Pipe, from Argentina</u>, 68 Fed. Reg. 39,516, 39,518 (July 2, 2003).  This practice has also been upheld in numerous decisions.  See <u>Peer Bearing Co. - Changshan v. United States</u>, 587 F. Supp. 2d. 1319, 1327 (CIT 2008); <u>Shanghai Taoen Int'l Trading Co. v. United States</u>, 360 F. Supp. 2d 1339, 1346 (CIT 2005); <u>Allegheny Ludlum Corp. v. United States</u>, 276 F. Supp. 2d. 1344, 1359 (CIT 2003). Commerce's decision in this review, to assign an AFA rate based on a highest transaction-specific rate from its previous review rather than a weighted-average margin, therefore, is contrary to its normal practice.

At times, however, Commerce has assigned an AFA rate to an uncooperative

respondent based on a transaction-specific margin.  See <u>Certain Frozen Warmwater Shrimp from Ecuador: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 10,698, 10,701 (Dep't Commerce Mar. 9, 2007); <u>Notice of Final Determination of Sales at Less Than Fair Value, and Negative Determination of Critical Circumstances: Certain Lined Paper Products from India</u>, 71 Fed. Reg. 45,012, 45,013 (Dep't Commerce Aug. 8, 2006) ("<u>Lined Paper</u>"); <u>Certain Cut-to-Length Carbon-Quality Steel Plate Products From Italy: Final Results and Partial Rescission of Antidumping Duty Administrative Review</u>, 71 Fed. Reg. 39,299, 39,302 (Dep't Commerce July 12, 2006) ("<u>Plate Products</u>"); <u>Frozen Concentrated Orange Juice From Brazil; Final Results and Partial Rescission of Antidumping Duty Administrative Review</u>, 64 Fed. Reg. 43,650, 43,651 52 (Dep't Commerce Aug. 11, 1999).  When departing from a previous practice, an agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are <u>better</u> than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency <u>believes</u> it to be better, which the conscious change of course adequately indicates." <u>FCC v. Fox Television Stations, Inc.</u>, 129 S. Ct. 1800, 1811 (2009).  Indeed, in the aforementioned proceedings where Commerce departed from its normal practice, its decision was upheld because it either explained that no other "probative alternatives" were available during an investigation, see <u>Ass'n of Am. Sch. Paper Suppliers v. United States</u>, Slip Op. 08-122, 2008 Ct. Int'l Trade LEXIS 128, at *15 17 (CIT Nov. 17, 2008) (internal quotation marks omitted), or explained why all previous weighted-average transactions were too low to provide an incentive to cooperate, see <u>Branco Peres Citrus, S.A. v. United States</u>, 173 F. Supp. 2d 1363,

1376 (2001). Thus, when Commerce departs from its normal practice and bases an AFA rate on a single-transaction margin, it must explain its decision.

In its Final Results, Commerce determined that 21.71%, the AFA rate assigned to SMW in the prior review and the highest weighted-average margin in the proceedings, was not sufficient "[b]ecause AVISMA's cash-deposit rate was 21.71 percent for entries during a portion of the 2007/08 POR." Issues and Decision Memorandum at 12. Commerce seemingly reasoned that if the cash deposit rate of 21.71% was not sufficiently adverse to cause AVISMA to cooperate during the period of review, the AFA rate needed to be higher. Id. at 11 12. Although such reasoning is likely enough to support a rate higher than 21.71%, the statutory language requires Commerce to corroborate the selected rate to the extent practicable, and as previously discussed, it has failed to do so here. See supra 5 8.

The fact that the rate of 21.71% was too low to incite AVISMA's cooperation does not render the much higher rate of 43.58% corroborated. Rather, the issue is whether the selected rate of 43.58% "represented a reasonably accurate estimate of [AVISMA's] actual dumping margin" and is therefore, corroborated. Gallant, 602 F.3d at 1325. To satisfy this statutory requirement, Commerce must either demonstrate how 43.58% is a reasonably accurate estimate of AVISMA's actual dumping rate (albeit with a deterrence factor built in) beyond the mere fact that there is one transaction on the record at this margin, or select a new rate that is better grounded in its commercial reality. See id. at 1323 25.

### III. Supplemental Information

On November 24, 2010, AVISMA filed a notice of supplemental authority,

alerting the court, for the first time, to the status of its litigation challenging the findings of the 2006/07 administrative review. Notice of Supplemental Authority, ECF No. 63. In that matter, AVISMA challenged the legality of Commerce's method for calculating the value of chlorine gas for the purposes of determining NV. See PSV VSMPO-AVISMA Corp. and VSMPA Tirus, U.S., Inc. v. United States, 724 F. Supp. 2d 1308, 1310 (CIT 2010). The court held that the valuation methodology Commerce used in that review was unsupported by the record and was contrary to the statute and remanded for further consideration. Id. In accordance with that order, Commerce filed its Results of Redetermination Pursuant to Remand, in which it reexamined its calculation methodology for NV and reduced AVISMA's AD margin for the 2006/07 review from 15.77% to 8.51%. Results of Redetermination Pursuant to Remand 15, available at Notice of Supplemental Authority, at Attach. AVISMA attached these remand results to its Notice of Supplemental Authority.

On November 30, 2010, the court held oral argument at which AVISMA contended that Commerce now needs to consider its 2006/07 remand determination, effectively reducing all of the transaction-specific AD margins from that review, when corroborating an AFA rate in this review. Tr. of Oral Arg. 3:12 24, Nov. 30, 2010. The Government, however, claimed that AVISMA had failed to exhaust this claim, as it had failed to challenge the calculation of the 43.58% rate at the administrative level. Id. at 22:12 22. The court ordered the parties to submit supplemental briefing on this issue. Order, Nov. 30, 2010, ECF No. 64. In its brief, AVISMA maintained that exhaustion does not apply to this information. Pls. PSC VSMPO-AVISMA Corp. and VSMPO-Tirus, US Inc.'s Resp. to Def. and Def.-Intervenor's

Comments on Pls.' Notice of Supplemental Authority ("Pls.' Supplemental Br.") 4.  This claim lacks merit.

The court "shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  "Although the court has discretion to remand an issue to the agency despite non-exhaustion of remedies . . . the Supreme Court has cautioned that a remand requires a showing that the failure to raise an issue was not the result of a lack of due diligence on the part of the claimant."  Bridgestone Ams., Inc. v. United States, 710 F. Supp. 2d 1359, 1366 (CIT 2010) (citations and internal quotation marks omitted).

AVISMA argues that it could not have questioned the 43.58% margin's veracity in the 2007/08 review because the allegedly flawed methodologies from the 2006/07 review were not on the 2007/08 record.  Pls.' Supplemental Br. 5.  Furthermore, AVISMA contends that such a challenge was barred by res judicata.[11]  Id. at 6  7.  This argument is unpersuasive, however, as the AFA rate of 43.58% from the 2007/08 review is merely a proxy that Commerce selected using facts otherwise available.  See 19 U.S.C. § 1677e(b).  AVISMA could have argued during the 2007/08 review that 43.58% was a flawed proxy per its own challenge of the 2006/07 review, and sought to incorporate that record, if necessary.  Such comment would have afforded Commerce the option of avoiding any potential problems with the accuracy of the 43.58%

---

[11] AVISMA also argues that this supplemental information does not raise a new issue, but rather further supports its original claim that the 43.58% transaction-specific rate was unreliable and uncorroborated.  Pls.' Supplemental Br. 12.  If the court were to require the recent developments concerning the 2006/07 review to be considered, however, all of the transaction-specific rates could be invalidated, including the smaller margins that AVISMA initially advanced.  See Pls.' Br. 24  25.  This issue, therefore, cannot be considered a mere extension of AVISMA's original claim.

calculation by agreeing with AVISMA or choosing another avenue, regardless of whether Commerce believed its calculation methodology from the 2006/07 review was correct.[12] See Unemployment Comp. Comm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946) (exhaustion affords agencies the "opportunity to consider the matter, make its ruling, and state the reasons for its action"); Aectra Refining and Marketing, Inc. v. United States, 565 F.3d 1364, 1373 (Fed. Cir. 2009) (a respondent must raise its specific claim on the agency level "even if the government authority to whom the claim is presented is certain to dispute the validity of the claim"). For this reason, AVISMA failed to exhaust the issue of whether the 2006/07 specific transaction margin was an adequate basis for an AFA rate here based on the manner of calculation in that review.[13] Nonetheless, this matter is remanded for other reasons, and Commerce should arrive at a rate

---

[12] "Exceptions to the exhaustion doctrine may include: (1) raising a pure question of law that neither creates undue delay nor causes expenditure of scarce party time and resources, . . . (2) judicial interpretations of existing law after decision below and pending appeal interpretations which if applied might have materially altered the result, . . . and (3) raising the issue before the agency would have been futile." Bridgestone Ams., 710 F. Supp. 2d at 1364 n.4 (citations and internal quotation marks omitted). None of these exceptions apply, however, as this issue requires factual decisions, AVISMA was aware of its own challenge of the 2006/07 review, and it is unclear if Commerce would have used other available facts to reach a corroborated AFA rate if this reason to do so had been presented.

[13] AVISMA claims that the use of incorrect information is contrary to law, as it violates concepts of fairness, accuracy, and cannot, as a practical matter, represent commercial reality. Pls.' Supplemental Br. 14 18. The court notes that this is not a case where the selected rate is based on another company's data. Under such circumstances, a respondent may be unaware of flaws and thus, exhaustion of remedies on the agency level would be impracticable. See Hormel v. Helvering, 312 U.S. 552, 558 59 (1941). In contrast, when a plaintiff is aware of possible problems with information from prior reviews, interests of "fairness" and accuracy will not trump those of judicial economy to excuse what is otherwise a failure to exhaust. See IPSCO, Inc. v. United States, 749 F. Supp. 1147, 1150 (CIT 1990), aff'd in relevant part, 965 F.2d 1056, 1061 62 (Fed. Cir. 1992) (providing that interests of "[j]udicial economy, fairness to the parties and the need to fulfill Congress's intent . . . requires that errors . . . be raised from the outset").

which is fair and will not needlessly multiply or extend proceedings.[14]

## CONCLUSION

For all the foregoing reasons, the court remands the matter for Commerce to reconsider the rate selected and explain it or to select another AFA rate based on substantial evidence. Any rate selected shall be corroborated to the extent practicable.

Commerce shall file its remand determination with the court within 75 days of this date. AVISMA and US Magnesium have 20 days thereafter to file objections, and the Government will have 11 days thereafter to file its response.

                                                                                          /s/ Jane A. Restani
                                                                                             Jane A. Restani
                                                                                                                        Judge

Dated: This 7th day of March, 2011.
       New York, New York.

---

[14] Thus, if Commerce now agrees that the specific transaction rate it selected is incorrect, the court expects it would substitute a different rate.