Slip Op. 11-115

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| PSC VSMPO-AVISMA Corporation and VSMPO-Tirus, U.S., Inc., | |
| Plaintiffs, | |
| v. | Before: Jane A. Restani, Judge |
| UNITED STATES, | Court No. 09-00349 |
| Defendant | **Public Version** |
| and | |
| US Magnesium LLC | |
| Intervenor Defendant | |

## **OPINION**

[Judgment sustaining Commerce's Remand Results in antidumping matter explaining selection of AFA rate will be entered.]

Dated: September 15, 2011

Arent Fox LLP (John M. Gurley, Mark P. Lunn, and Diana Dimitriuc-Quaia) for the plaintiffs.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Claudia Burke, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand and Renee Gerber); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Daniel J. Calhoun), of counsel, for the defendant.

King & Spalding, LLP (Stephen A. Jones, Jeffrey B. Denning, Jeffrey M. Telep, Patrick J. Togni, and Steven R. Keener) for the intervenor-defendant.

Restani, Judge:  This matter comes before the court following its decision in PSC VSMPO-AVISMA Corp. v. United States, 755 F. Supp. 2d 1330, 1333 (CIT 2011), in which the

court remanded <u>Magnesium Metal From the Russian Federation: Final Results and Partial Rescission of Antidumping Duty Administrative Review</u>, 74 Fed. Reg. 39,919 (Dep't Commerce Aug. 10, 2000) ("<u>Final Results</u>") to the United States Department of Commerce ("Commerce"). For the reasons stated below, the court sustains Commerce's remand determination.

## BACKGROUND

The facts of this case have been well-documented in the court's previous opinion. <u>See</u> <u>PSC VSMPO-AVISMA Corp.</u>, 755 F. Supp. 2d at 1333–35.  The court presumes familiarity with that decision, but briefly summarizes the facts relevant to this opinion.

Plaintiffs PSC VSMPO-AVISMA Corporation and VSMPO-Tirus, U.S., Inc. (collectively "AVISMA") challenged the final results of an administrative review of the antidumping duty order on magnesium metal from the Russian Federation ("Russia"), which assigned AVISMA the dumping margin[1] of 43.58% based on total adverse facts available ("AFA").  <u>See</u> <u>Final Results</u>, 74 Fed. Reg. at 39,920.  Upon considering AVISMA's motion for judgment on the agency record, the court held that the AFA rate was uncorroborated, and therefore remanded the matter to Commerce with instructions "to reconsider the rate selected and explain it or to select another AFA rate based on substantial evidence."  <u>PSC VSMPO-AVISMA Corp.</u>, 755 F. Supp. 2d at 1342.

On remand, Commerce "reconsidered its selection of an AFA rate of 43.58 percent for AVISMA in the 2007/2008 administrative review and determined that it [was] able to

---

[1] A dumping margin is the difference between the normal value ("NV") of merchandise and the price for sale in the United States.  <u>See</u> 19 U.S.C. § 1673e(a)(1); 19 U.S.C. § 1677(35). Unless nonmarket economy methodology is used, an NV is either the price of the merchandise when sold for consumption in the exporting country or the price of the merchandise when sold for consumption in a similar country.  19 U.S.C. § 1677b(a)(1).  An export price or constructed export price is the price that the merchandise is sold for in the United States.  19 U.S.C. § 1677a(a)-(b).

corroborate that AFA rate using reliable and relevant facts that are grounded in AVISMA's commercial reality." Results of Redetermination Pursuant to Court Remand at 18 (Dep't Commerce July 1, 2011) (Docket No. 92) ("Remand Results"). Despite Commerce's new explanation, AVISMA maintains that Commerce's corroboration is insufficient. See PSC VSMPO-AVISMA and VSMPO-Tirus, US Inc.'s Cmts. on Def.'s Redetermination on Remand at 1 ("AVISMA's Cmts."). In contrast, intervenor defendant US Magnesium LLC ("US Magnesium") asks the court to affirm the Remand Results. See US Magnesium's Resp. to AVISMA's Objections to Commerce's Redetermination Pursuant to Remand at 6 (July 29, 2011) ("US Magnesium's Resp.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will not uphold Commerce's final determination in an antidumping ("AD") review if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

The court has previously explained that during an AD review, when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority . . . the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b); see PSC VSMPO-AVISMA Corp., 755 F. Supp. 2d at 1342. Under these circumstances, the AD duty rate is known as an AFA rate and may be based on information obtained from: "(1) the petition, (2) a final determination in the investigation under this subtitle, (3) any previous review under [19 U.S.C. § 1675] . . . or

determination under [19 U.S.C. § 1675b] . . . , or (4) any other information placed on the record." Id.

When selecting an AFA rate, however, Commerce's broad discretion under the statute is not without limitations, see PAM S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009), as "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins," F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000).  Thus, pursuant to 19 U.S.C. § 1677e(c), "[w]hen the administering authority . . . relies on secondary information rather than on information obtained in the course of an investigation or review, the administering authority . . . shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal." 19 U.S.C. § 1677e(c).  As the selected rate of 43.58% is AVISMA's highest transaction-specific rate from the previous review, it is secondary information and must be corroborated.  See PSC VSMPO-AVISMA Corp., 755 F. Supp. 2d at 1336; KYD, Inc. v. United States, 607 F.3d 760, 765 (Fed. Cir. 2010) (providing that "[s]econdary information includes [i]nformation derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under [19 U.S.C. § 1675] concerning the subject merchandise" (alteration in original) (internal quotation marks omitted)).

In order to corroborate an AFA rate, Commerce must show that it used "reliable facts" that had "some grounding in commercial reality." Gallant Ocean (Thai.) Co. v. United States, 602 F.3d 1319, 1324 (Fed. Cir. 2010) (internal quotation marks omitted).  On remand, Commerce explained that the 43.58% AFA rate was grounded in AVISMA's commercial reality because it was supported by import statistics and the increased value of the Russian ruble during

the period of review ("POR"). Remand Results at 3–4. In reaching this conclusion, Commerce first calculated a gross United States sale per unit price based on the Global Trade Atlas's import statistics of magnesium metal from Russia during the POR.[2] Id. at 3. Commerce then compared this estimated U.S. price to the reported gross price per unit of AVISMA's United States sale (the sale from the previous review with the transaction-specific rate of 43.58%) and determined that the two U.S. prices were similar.[3] See id. at 12–13. Next, Commerce considered AVISMA's NV for the POR, and reasoned that it was likely that the Russian market price for magnesium metal increased due to inflation. Id. at 4. Based on these assumptions, Commerce determined that AVISMA could have dumped at a rate close to 43.58%[3] during the POR. Id. at 12.

AVISMA claims that Commerce failed to corroborate the selected AFA rate and supports this contention by identifying alleged logical inconsistencies in its reasoning. See AVISMA's Cmts. 3. The court will address each argument accordingly.

---

[2] Although these important statistics theoretically capture all Russian magnesium metal imported into the United States, Commerce reasonably assumed that all of these sales were made by AVISMA because the evidence showed that the only other participating respondent, Solikamsk Magnesium Works ("SMW"), did not export magnesium metal to the United States during the POR. Remand Results at 4–5.

[3] Commerce calculated an estimated price of $2.44 per kilogram. Remand Results at Attach. I 4. The reported gross unit price for AVISMA's sale with the transaction-specific rate of 43.48% was [[     ]] per kilogram. Id. at Attach. II 1.

[3] AVISMA again argues that this rate has been invalidated and that the court "should take judicial notice of this [fact] and direct the Department to consider the data on remand." AVISMA's Cmts. 2 n.2. The court, however, has previously held that Commerce need not consider this data because AVISMA failed to exhaust this issue on the administrative level. See PSC VSMPO-AVISMA Corp., 755 F. Supp. 2d at 1341.

*Confidential Data Deleted*

**I.      The Comparison of Average Import Price and Gross Selling Price**

First, AVISMA argues that Commerce's methodology artificially increased the subject merchandise's price for sale in the United States by impermissibly substituting an average import price, which is the exporter's price to its affiliate in the United States, for the previously used gross unit selling price, which is the first sale in the stream of commerce to an unaffiliated buyer. See id. at 7–11. AVISMA claims that this assumption is not supported by substantial evidence, as the record from the previous review demonstrates that the affiliated seller indeed collected a profit.[4] See AVISMA's Cmts. 11. This claim lacks merit.

The court recognizes that by comparing these two values, Commerce essentially assumes that these numbers are the same, meaning that the affiliated seller received virtually no profit from its sale of the subject merchandise in the United States. See Remand Results at 14 (providing that "it is impossible to determine whether AVISMA's U. S. affiliate earned a profit or incurred a loss" because Commerce does not have "information on the record to assess whether or to what extent there are differences between AVISMA's U.S. sale price to its U.S. affiliate and the U.S. affiliate's U.S. sale price to an unaffiliated customer . . . ."). The court also recognizes, however, that Commerce only possesses reliable information for the POR concerning average import price and lacks any record evidence regarding gross unit selling price. See Gallant Ocean (Thai.) Co., 602 F.3d at 1324 (providing that Commerce must corroborate an AFA using reliable facts). The alternative methodology that AVISMA now promotes to calculate a proxy for gross unit selling price, which requires Commerce to estimate a percentage

---

[4] For example, the record indicates that the affiliated seller collected a profit of [[     ]] on the sale from the previous review with the 43.58% transaction-specific margin. AVISMA's Cmts. 11.

*Confidential Data Deleted*

increase for the affiliate's profit based on previous reviews, is more speculative and thus less grounded in fact than the current substitution.  See AVISMA's Cmts. 8.

In a situation such as this, when a respondent has deprived Commerce of the very information it needs to accurately corroborate an AFA rate, the law does not require that Commerce's methodology be perfect.  See Qingdao Taifa Grp. Co. v. United States, Slip Op. 2011-83, 2011 Ct. Int'l Trade LEXIS 81, at *13 (CIT July 12, 2011) ("Taifa IV").  Rather, the statutory language only requires Commerce to corroborate a selected rate "to the extent practicable," 19 U.S.C. § 1677e(c), thus taking into account the potential difficulties associated with a lack of record evidence.  Although this does not mean that Commerce automatically satisfies the statute by merely adopting the highest transaction-specific rate from a previous review, see PSC VSMPO-AVISMA Corp., 755 F. Supp. 2d at 1337, Commerce maintains the discretion to make an "inference that is adverse" to the respondent, 19 U.S.C. § 1677e(b); see PAM S.p.A., 582 F.3d at 1340.  As there is no record evidence to the contrary, the inference made here is among those contemplated by 19 U.S.C. § 1677e(b) because in an effort to corroborate this AFA rate Commerce reasonably utilized the only reliable information it had regarding AVISMA's commercial reality.  Thus, Commerce's choice to use this data to calculate a price for sale in the United States during the POR was supported by substantial evidence and not contrary to law.[5]

---

[5] AVISMA argues that even if Commerce's consideration of the import statistics was proper, a United States sales price of $2.44 per kilogram does not necessarily yield a dumping margin of 43.58%.  See AVISMA's Cmts. 13–14.  In support of this contention, AVISMA cites several transactions that had the same low United States sales price—only one of which had the transaction-specific rate that Commerce now uses.  See id.  This fact alone, however, does not undercut the results because, as discussed infra, it is reasonable to infer that the subject merchandise's NV also increased.  This combination of a lower average sales price in the United States and a higher NV supports the assumption that a dumping margin for this POR would be

(continued...)

## II.     Inflation

Next, AVISMA argues that Commerce's correlation between the increased value of the ruble and NV is unsupported. AVISMA's Cmts. 14 ("The Department assumed – based on no evidence on the record of this case – that the Russian home market price for AVISMA's sales of magnesium increased just because Russia might have experienced inflation for that period."). AVISMA does not challenge the validity of Commerce's inflation statistics, but rather its assumption that inflation could have caused the NV of the subject merchandise to increase. See AVISMA's Cmts. 14–15. This claim lacks merit

As previously discussed, the law does not permit a respondent to remove all evidence from the record and then use the absence of that very information to defeat reasonable inferences that Commerce must make in furtherance of the statute. See Taifa IV, 2011 Ct. Int'l Trade LEXIS 81, at *13; supra § I. In the context of this review, it seems feasible that the Russian sale price of magnesium metal would increase if the value of the ruble itself increased during the POR. Commerce's assumption that NV increased, therefore, is reasonable in the absence of contrary evidence. See Remand Results at 15–16.[6]

---

    [5](...continued)
closer to the highest previously calculated rate. See 19 U.S.C. § 1673e(a)(1); 19 U.S.C. § 1677(35).

    [6] In addition to these arguments, AVISMA contends that Commerce failed to corroborate the selected AFA rate because it, at best, has only corroborated "the gross unit price of the sale generating that margin . . . ." AVISMA's Cmts. 16. This characterization, however, is misguided. The mere fact that the selected AFA rate is based on a transaction-specific rate does not automatically render it any more or less representative of AVISMA's commercial reality. PSC VSMPO-AVISMA Corp., 755 F. Supp. 2d at 1336 (providing that "[t]he mere fact that specific-transaction data is accurate and verified does not ipso facto render it reliable . . . [r]ather, reliability in this context is determined by the information's relationship to the commercial reality of this respondent" (citations omitted)). Rather, to corroborate such a rate, Commerce must show its connection to AVISMA's "market realities." Id. at 1337. Here,
(continued...)

**III.     Prior and Subsequent Calculated Dumping Margins**

Finally, AVISMA contends that the weighted average margins for magnesium metal from Russia support its claim that the selected rate of 43.58% is not connected to its commercial reality.[7]  AVISMA's Cmts. 18.  Specifically, AVISMA argues that "these reviews are informative, as they demonstrate that after the initial investigation there has been little or no dumping."  Id. at 19.  Nevertheless, the evidence of calculated rates from other reviews is irrelevant so long as the selected AFA rate as a proxy is corroborated.  See 19 U.S.C. § 1677e(c); 19 U.S.C. § 1677e(b) (providing that Commerce has the discretion to "select[] from among the facts otherwise available" (emphasis added)).  The lower calculated dumping margins from other reviews, therefore, do not invalidate Commerce's otherwise corroborated 43.58% AFA rate.

The selected AFA rate of 43.58%, therefore, is corroborated to the extent practicable as Commerce has demonstrated its connection to AVISMA's market realities during the POR.  Accordingly, the AFA rate assigned to AVISMA is lawful.

---

[6](...continued)
Commerce has demonstrated that the gross unit price of the sale generating the highest transaction-specific margin in the previous review is a reasonable proxy for the average price for sale in the United States during the POR.  As previously discussed, this inference, in combination with the likelihood that the NV during the POR was larger than in prior reviews, renders the 43.58% sufficiently connected to AVISMA's market realities during the POR.  Although the assumptions that connect AVISMA's commercial reality during the POR to the highest specific-transaction rate from the previous review may be less than perfect, they are within the realm of acceptable data when a respondent has withdrawn all information from the record.  See Taifa IV, 2011 Ct. Int'l Trade LEXIS 81, at *13.

[7] AVISMA cites the rates calculated for both it and SMW in prior and subsequent reviews.  AVISMA's Cmts. at 18.  SMW only cooperated in the initial investigation and the first review.  See Magnesium Metal from the Russian Federation: Final Results of Antidumping Duty Administrative Review, 73 Fed. Reg. 52,642, 52,643 (Dep't Commerce Sept. 10, 2008).  In the second review, SMW failed to cooperate and was assigned an AFA rate.  Id.  SMW does not currently export magnesium metal to the United States.  See Remand Results at 4–5.

## CONCLUSION

For the foregoing reasons, Commerce's determinations are supported by substantial evidence and are in accordance with the law. Accordingly, the <u>Remand Results</u> are sustained.

                                                        <u>/s/ Jane A. Restani</u>
                                                           Jane A. Restani
                                                                Judge

Dated: This 15th day of September, 2011.
       New York, New York.

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PSC VSMPO-AVISMA Corporation and VSMPO-Tirus, U.S., Inc., | |
| Plaintiffs, | |
| v. | Before: Jane A. Restani, Judge |
| UNITED STATES, | Court No. 09-00349 |
| Defendant | |
| and | |
| US Magnesium LLC | |
| Intervenor Defendant | |

## JUDGMENT

The determination on remand of the United States Department of Commerce in this action is hereby sustained and in accordance with 19 U.S.C. § 1516a(e), liquidation of any entries heretofore enjoined in this action shall be liquidated only in accordance with the final results of this litigation, including any and all appeals.

    /s/ Jane A. Restani
    Jane A. Restani
    Judge

Dated: This 15th day of September, 2011.
    New York, New York.